United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MELVINA N. SMITH,

    Plaintiff,

    v.

ANDREW SAUL,

    Defendant.

Case No. 19-cv-05930-SI

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 24, 26

The parties have filed cross-motions for summary judgment in this Social Security appeal. Dkt. Nos 24 and 26. Having considered the parties' papers and the administrative record, the Court hereby GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment. For the reasons below, the Court REVERSES the denial of benefits and REMANDS for immediate payment of benefits.

## BACKGROUND

**I.  Administrative Proceedings**

On September 26, 2006, Administrative Law Judge (ALJ) Michael Blume approved plaintiff for Title II benefits based on her bipolar disorder, finding plaintiff disabled as of August 12, 2003. AR 97.

The Commissioner later reviewed plaintiff's case and, as of July 1, 2011, found plaintiff no longer disabled. AR 102. Plaintiff appealed and a hearing was held on May 9, 2013, before ALJ Philip E. Callis during which plaintiff was not represented by counsel. AR 102,112. Judge Callis upheld the Commissioner's finding that plaintiff's disability had ended as of July 1, 2011. *Id*. Plaintiff appealed Judge Callis' unfavorable decision and, on March 25, 2015, the Appeals Council denied plaintiff's appeal. AR 17. Plaintiff did not appeal the denial, thus the denial remains final and binding. AR 17, 102-112.

On February 23, 2015, plaintiff, then 45 years old, re-applied for benefits seeking supplementary security income under Title XVI of the Social Security Act. AR 234-42. To obtain benefits, plaintiff had to show "changed circumstances" affecting the issue of disability with respect to the unadjudicated period (e.g., a change in age category, an increase in the severity of her impairments, or the alleged existence of impairments not previously considered). AR 17. Despite the prior unchallenged disability finding, plaintiff alleged disability began on August 11, 2003. AR 265. On January 4, 2016, plaintiff's claim was denied initially and denied again on September 2, 2016 upon reconsideration. AR 159, 168.

On January 18, 2018, ALJ Arthur Zeidman conducted a hearing on plaintiff's application. AR 40. On August 3, 2018, the ALJ found

> new material evidence showing changed circumstances includ[ing] revisions to the mental impairment listing subsequent to the date of the prior administrative law judge's decision….and a change in age category…. sufficient to rebut the presumption of continuing non-disability

(AR 17) but ultimately issued an unfavorable decision (AR 14-38). On October 10, 2018, plaintiff sought review of the ALJ's decision and the request was denied by the Appeals Council on July 29, 2019. AR 230, 1. On September 23, 2019, plaintiff filed this action for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Dkt. No. 1 (Complaint).

## II.     Medical & Personal History

Plaintiff is a 51-year old African American woman who has not engaged in substantial gainful activity since February 2015, when she reapplied for benefits. AR 20. Plaintiff is a high

school graduate with two years of college experience and no vocational training. AR 45-46. Plaintiff's past relevant work was as a customer service representative, dispatcher, and hair braider. AR 66.

Plaintiff was married for 17 years but is now divorced and lives with her two of her adult children. AR 468, 528. Plaintiff was the victim of domestic violence, suffering numerous concussions and beatings at the hand of her ex-husband who would knock her to the ground and kick her. AR 528. During a psychological evaluation in November 2015, plaintiff reported that she lives in fear of her ex-husband and suffers from nightmares about the beatings. *Id*.

In December 2017, plaintiff's mother died, which impacted her mental health – compounding her depression and anxiety. AR 59, 708. Plaintiff's relationship with her mother was complicated; during a November 2015 psychological examination, plaintiff stated her mother was very mean to plaintiff and beat her. AR 528.

A home health aide assists plaintiff with daily living activities. AR 528, 604.

### A. Plaintiff's Mental Health

Since at least 2006, plaintiff has been diagnosed with bipolar disorder. AR 96, 709. For many years, plaintiff has also suffered from anxiety. AR 129, 433, 468, 499, 604, 674, 691, 709, 719. Plaintiff's doctors, psychologists, and plaintiff's own testimony during the January 18, 2018 hearing stated plaintiff hears voices and a treating doctor indicated plaintiff should be diagnosed with schizoaffective disorder. AR 52, 528, 710. Plaintiff has been prescribed various medications over the years for her mental health impairments, including Abilify, Trileptal, Klonopin, Valium, Prozac, Trazadone and Xanax. AR 396, 399, 411.

Defendant argues plaintiff's mental status examinations in 2015, the year in which she re-applied for benefits, were "generally unremarkable, with appearance, behavior, speech, mood/affect, thought process, thought content, orientation, concentration, fund of knowledge, and impulse control within normal limits, and fair insight and judgment." Dkt. No. 26 at 8[1]. The doctors' notes

---

[1] For ease of reference, page citations to docket numbers refer to the ECF branded page number in the upper right corner of the page.

from plaintiff's 2015 visits reflect plaintiff as generally composed, polite, and oriented. AR 458-59 (January 2015 Visit Notes), 452-53 (February 2015 Visit Notes), 446-47 (April 2015 Visit Notes), 441 (May 2015 Visit Notes). However, the same notes show plaintiff reported auditory hallucinations and paranoid ideation, which were not reported during her 2014 visits. AR 458-59[2]; AR 452-53[3], April 2015 (AR 446-47), May 2015 (AR 441[4])).

In November 2015, at the agency's behest, plaintiff presented to Ahmed El-Sokkary, Psy.D., for a psychiatric consultative examination. AR 528-30. Plaintiff reported she was experiencing high stress levels due to her bills not being paid and suffering from bipolar disorder, post-traumatic stress disorder, and anxiety attacks. AR 528. In the defendant's opposition/motion, Dr. El-Sokkary stated

> Plaintiff said she was able to care for her hygiene, grooming, and daily living activities, including light cooking and cleaning (AR 528). Her adult children helped her out (AR 528). **On examination, in stark contrast to the previous treating examinations,**[5] she was withdrawn and appeared to be internally preoccupied, her eyes were downcast, but she was alert and oriented (AR 529). Her speech had some delays and she stuttered (AR 529). She was able to recall three out of three words immediately, but none after a delay (AR 529). She could repeat five digits forward and two digits backwards, was able to spell world forward but not backwards, and she could not preform simple calculations (AR 529). Her insight and judgment were impaired and her thought process was underproductive (AR 529). Her mood was depressed and her affect congruent (AR 529).

Dkt. No. 26 at 8-9 (emphasis added). However, defendant omitted critical other portions of Dr. El-Sokkary's notes, namely

> hears people calling her and is very scared at this time and feels that she is getting wors[e]. Claimant reported that she often sleeps in bed and has trouble getting up in

---

[2] January 2015 doctor visit where plaintiff reported very rare auditory hallucinations as well as paranoid ideation not reported in 2014 visits.

[3] February 2015 doctor visit where plaintiff reported very rare auditory hallucinations as well as paranoid ideation not reported in 2014 visits.

[4] May 2015 doctor visit where plaintiff reported very rare auditory hallucinations as well as paranoid ideation not reported in 2014 visits.

[5] In December 2017, plaintiff exhibited strange behavior during a routine appointment with her doctor who noted she was "currently playing games on her phone during the interview." AR 710. Also, many of the doctors' visit notes are not as detailed as Dr. El-Sokkary's. *See* AR 458-59 (January 2015 Visit Notes), 452-53 (February 2015 Visit Notes), 446-47 (April 2015 Visit Notes), 441 (May 2015 Visit Notes).

> the morning because she is depressed and has no motivation to get out of bed … Claimant's doctor has prescribed her an in home care provider for about 40 hours a week because she is not able to cook and do daily activities alone. Claimant reported that she has been suffering from memory loss and inability to focus and yesterday came to the appointment by accident.

AR 528.

Based on his observations during the visit with plaintiff, Dr. El-Sokkary concluded plaintiff had a "limited capacity to understand, remember, and perform simple tasks." AR 530. She "struggled to maintain sufficient level of concentration, persistence, and pace which indicated that she would have difficulty in a competitive work setting." *Id*. Plaintiff struggled to communicate, which would impede her communication with supervisors and coworkers. *Id*. Dr. El-Sokkary also opined plaintiff would struggle to keep a regular work schedule. *Id*.

In December 2015, state agency psychiatrist Martin Held, M.D., reviewed plaintiff's medical record and Dr. El-Sokkary's report and opined that plaintiff's limitations were no more than moderate in any area of mental functioning. AR 133-35. Dr. Held did not give Dr. El-Sokkary's opinion much weight due to discrepancies between observations from plaintiff's treatment providers and field office employees who indicated plaintiff had no difficulty understanding, concentrating, or answering questions and was able to provide all of the medical information needed for her claim. AR 128.

In July 2016, Rena Pompa, Psy. D., concurred with Dr. Held's opinion. AR 152-54.

M. Morando, M.D., reviewed additional treatment records in September 2016 and likewise concurred with Drs. Held and Pompa. AR 147. Drs. Held, Pompa, and Morando are all non-examining doctors. Dkt. No. 24 at 16.

Defendant cites plaintiff's treatment notes as evidence of her stable mental health and general acumen. Dkt. No. 26 at 10, 19, and 26. However, many of the notes are only a few sentences – not comparable to the detailed written evaluation submitted by Dr. El-Sokkary. Further, as brief as the notes are, they indicate ongoing mental health issues. For example, the notes from a March 16, 2016 visit state in part: "panic attacks are worse as she thinks about her mother, dementing with AD." AR 727. Notes from a October 11, 2016 visit state "[s]he had a [motor vehicle accident], claiming panic and paranoia as a result." AR 722. Treatment notes in March 2017 reflect that

plaintiff procured a lawyer to restore her social security benefits and that plaintiff "feels her meds are helpful but [is] sometimes overcome by stress." AR 742.

### B. Plaintiff's Physical Health
#### 1. Plaintiff's Physical Ailments

In 2012 and 2013, imaging of plaintiff's lumbar spine confirmed lumbar degenerative disc disease and grade one anterolisthesis. AR 388, 423, 704. In April 2014, plaintiff's primary care physician, Mannie Joel, M.D., diagnosed lumbar disc disease with bilateral radiculopathy, S1 facet joint arthropathy, cervical disc disease with bilateral radiculopathy, and neuropathic pain. AR 408.

In November 2014, plaintiff reported chronic pain in her back, hips, and knees. AR 432. Dr. Joel examined plaintiff, noted some tenderness, but found plaintiff's condition had not changed significantly. AR 432. However, due to plaintiff's complaints of chronic pain, she was prescribed methadone, oxycodone, norco and dilaudid. AR 432.

In March 2015, plaintiff reported pain in her back, knees, and pelvis; upon examination, Dr. Joel noted focal tenderness over one facet and tenderness over plaintiff's SI joints. AR 430. As a result, Dr. Joel adjusted plaintiff's pain medication, noting conservative titration of dosages. AR 430. In May 2015, plaintiff reported pain in the same areas – Dr. Joel noted no significant changes in plaintiff's physical examination. AR 429.

From November 2015 through at least April 2016, plaintiff was prescribed oxycodone, norco, morphine and carisoprodol for pain. AR 523, 673.

In November 2015, plaintiff saw Omar Bayne, M.D., for a physical consultative examination and reported low-back, right-ankle, and right-wrist pain. AR 523-25. Dr. Bayne's diagnostic impressions were that plaintiff suffered from: (1) chronic recurrent low back strain/sprain; (2) degenerative grad I L5-S1 anterolisthesis; (3) recurrent right carpal tunnel syndrome status post right carpal tunnel release; and (4) traumatic arthritis of the right midfoot status post right midfoot fracture. AR 524.

Dr. Bayne opined that (1) plaintiff retained the ability to stand or walk for four hours in an eight-hour day and sit for six hours; (2) she could drive and take public transportation; (3) she

6

required a cane and postural movements were limited to occasional; (4) she could lift and carry 20 pounds occasionally and 10 pounds frequently; and (5) was limited to occasional right-hand manipulation, and needed to avoid unprotected heights. AR 524-525.

In July 2016, plaintiff was medicated intravenously in the hospital with Zofran for gastroenteritis and dilaudid and morphine for pain. AR 638.

In October 2016, x-rays of plaintiff's bilateral knees confirmed mild to moderate medial compartment joint space narrowing and minimal-mild joint effusion. AR 424-25, 696. Imaging of plaintiff's foot and ankle showed some spur formation and suggested arthritis of the midfoot area AR 421, 427, 523, 701-02.

In December 2015, State agency physician H. Samplay, M.D. reviewed plaintiff's medical records and Dr. Bayne's report and concluded plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand or walk four hours and sit for six in an eight-hour day; was limited to occasional postural movements and frequent right-hand manipulation; and required a cane for "long distances and uneven terrain for support only." AR 131-33.

In June 2016, State agency physician B. Williams, M.D. reviewed plaintiff's medical records and concurred with Dr. Samplay's opinion (AR 150-52).

### 2. Facts Regarding Plaintiff's Use of Alcohol and Drugs

In 2016 plaintiff was hospitalized twice for pancreatitis. AR 565, 601. The first instance occurred in July 2016, where doctors' notes indicate plaintiff told ER doctors she drank "1 to 2 pints of vodka every day … she says she denies any history of alcohol withdrawal. No history of delirium tremens." AR 604; *see also* AR 634 ("Patient reports stopping drinking alcohol from her usual of drinking everyday … Patient denies any drug use."). The same ER records indicate "cocaine mania," but plaintiff's toxicology screen was negative for cocaine metabolites. AR 618, 637. Upon being admitted, plaintiff did not exhibit any alcohol withdrawal symptoms. AR 604. Plaintiff reported four days of abdominal pain, nausea, and vomiting when she was admitted to the hospital. *Id*. Further, plaintiff's discharge instructions advised her to cease smoking cigarettes and drinking but did not refer plaintiff to alcohol abuse counseling or treatment. AR 535-40.

7

The second incident occurred on November 18, 2016, plaintiff was admitted to the same ER for pancreatitis and treated with fentanyl for pain management. AR 565, 590. While in the ER, plaintiff was tested for cocaine metabolites and none were detected according to the lab report though the report notes plaintiff was "presumed positive" for cocaine. AR 595. The ER doctor's notes indicate plaintiff denied drug use. AR 588. Subsequent ER records indicate plaintiff actually tested positive, rather than presumed positive, for cocaine and alcohol but that information does not appear in the actual laboratory report. AR 566, 569, 588. Another ER record from the same hospitalization indicates a 20 year history of heavy alcohol use. AR 585.

Generally, plaintiff's medical records neither discuss her use of alcohol nor indicate a drinking or drug problem. Plaintiff's 2016 hospitalizations stand alone as the only two incidents where plaintiff was suspected of an alcohol problem; the records of plaintiff's multiple exams for x-rays, MRIs, psychological exams and treatment, and physical health records do not indicate she ever arrived for the exams/appointments intoxicated. AR 396-405, 437-512, 523-25, 528-30, 543-63, 694-704, 664-68, 708. Plaintiff's treating psychiatrist noted the July 2016 hospitalization but otherwise did not indicate ongoing problems with alcohol. AR 546, 713. An October 2013 note indicates plaintiff had a DUI "years ago." AR 511. An April 2016 toxicology screen was negative for ethyl alcohol but positive for biomarkers of recent alcohol intake. AR 680.

During her January 18, 2018 hearing, plaintiff vociferously asserted she does not have problems with alcohol or cocaine and that she does not "drink anymore." AR 57-58 ("I don't drink 5 drinks a day. I don't even know where [the ER doctor] got that from. I never told him that. I told him I had a few drinks the day before or whatever."). Plaintiff testified "at one point" she drank alcohol for depression but realized the alcohol was not helping and stopped drinking. AR 58. Plaintiff speculated the ER doctor confused her with someone else and her pancreatitis was caused by something other than alcohol. AR 59.

Finally, the state agency consultants at the initial and reconsideration levels of adjudication reviewed plaintiff's treating records and stated "there is no evidence of any substance abuse disorder/DAA issue." AR 136, 156. Nor do the two prior ALJ hearing decision mention any drug or alcohol issue. AR 95-7, 102-12.

**LEGAL STANDARD**

**I.     Standard of Review**

The Social Security Act authorizes judicial review of final decisions made by the Commissioner. 42 U.S.C. § 405(g). Here, the decision of the ALJ stands as the final decision of the Commissioner because the Appeals Council declined review. 20 C.F.R. § 416.1481. The Court may enter a judgment affirming, modifying or reversing the decision of the Commissioner, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g).

The Commissioner's factual findings are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001). The Court may set aside the Commissioner's final decision if the decision is based on legal error or the findings of fact are not supported by substantial evidence in the record. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id*. at 1098. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation marks and citations omitted). To determine whether substantial evidence exists, the Court considers the record as a whole, weighing both evidence supporting and evidence detracting from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098 (citation omitted). "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

**II.    Disability Benefits**

A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months[,]" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" 42 U.S.C. § 1382c(a)(3)(A)-(B). SSA regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4).

The five steps of the evaluation are:

> 1.) Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. See 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2.) Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. See 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3.) Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. See 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4.) Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. See 20 C.F.R. §§ 404.1520(e), 416.920(e).
>
> 5.) Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. See 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The claimant has the burden of proof for steps one through four and the Commissioner has the burden of proof for step five. *Tackett*, 180 F.3d at 1098. The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. *Id.* at 1098 n.3.

In between the third and fourth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), (e), 416.945(a)(5)(i). To determine the RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to meet the physical, mental, sensory, and other requirements of work. *Id*. §§ 404.1545(a)(4), 416.945(e). The ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record. *Id*. The evidence can include the claimant's own statements about his or her symptoms, but such statements must be adequately supported by the record in order

10

to establish a disability. *Id.* In order to determine whether the claimant's statements are adequately supported, the ALJ must first determine whether the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms, and then must evaluate the intensity and persistence of the claimant's symptoms. *Id.* When evaluating intensity and persistence, the ALJ must consider all the available evidence, including the claimant's medical history, objective medical evidence, and statements about how the claimant's symptoms affect him or her. *Id.* The ALJ cannot reject statements about the intensity and persistence of symptoms solely because no objective medical evidence substantiates the statements. *Id.* §§ 404.1529(c)(2), 416.929(c)(2). The ALJ must also consider factors relevant to the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms. *Id.* § 416.929(c)(3)(i)-(vii). After determining the RFC, the ALJ proceeds to steps four and five of the disability inquiry.

### III. Drug Addiction & Alcoholism

If, considering all of the claimant's medically determinable impairments, there is a determination that the claimant is disabled, and there is medical evidence showing drug addiction and alcoholism ("DAA"), then the ALJ must determine whether the DAA is "material" to the finding that the claimant is disabled. 20 C.F.R. § 404.1535. The Social Security Act provides that a claimant "shall not be considered disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the . . . determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In determining whether a claimant's DAA is material, the test is whether an individual would still be found disabled if he or she stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). The ALJ must "evaluate which of [the claimant's] current physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines the claimant's remaining

1  limitations are disabling, then the claimant's DAA is not a material contributing factor to the
2  determination of disability, and the claimant is disabled, independent of his or her DAA.  See 20
3  C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).  The claimant bears the burden of proving her
4  substance use is not a material contributing factor to her disability.  *Parra*, 481 F.3d at 748.

## ALJ DECISION

ALJ Arthur Zeidman conducted the requisite five-step disability analysis for plaintiff's claim.  AR 17-33.

**At step one**, the ALJ found plaintiff had not engaged in substantial gainful activity since February 2, 2015, her protective filing date.  AR 20.

**At step two**, the ALJ found plaintiff had severe impairments including degenerative disc disease of the lumbar spine, osteoarthritis, myocardial infarction, pancreatitis, obesity, bipolar disorder, and alcohol use disorder.  AR 20.

**At step three**, the ALJ found plaintiff did not have an impairment or combination of impairments meeting or equaling a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1 and specifically considered Listings 1.02, 1.04, 4.0, 5.0, and all impairments under section 12.00. AR 20-21 ("claimant's mental impairments . . . do not meet or medically equal the criteria of any impairment listed in section 12.00").  The ALJ determined that with the severe impairments found at step two, plaintiff's RFC allowed her to perform a reduced range of light exertion work and that she could: (a) sit, stand, or walk for six hours; could not work at unprotected heights or operate a motor vehicle; (b) could perform only simple work with frequent (as opposed to constant) interaction with supervisors, coworkers, and the public; (c) she needed to recover for up to 10 minutes a day because of panic attacks, and (d) would be absent 20 percent of the time. AR 22.  The ALJ then discussed the medical evidence showing plaintiff's alcohol use contributed to her limitations.  AR 22-24.  As a result of plaintiff's limitations, the ALJ found plaintiff was disabled because she could not perform past work, or any work in the national economy.  AR 24-25 ("…the undersigned concludes that, considering all of the claimant's impairments, including the substance use disorders, …[a] finding of 'disabled' is therefore appropriate…").

Finding plaintiff was disabled *with* her alcohol abuse, the ALJ then had to make a factual finding as to what limitations would remain if plaintiff stopped using alcohol. AR 25. The ALJ found plaintiff's limitations would be similar but plaintiff would no longer be absent 20 percent of the time. AR 25-27. If plaintiff was not absent 20 percent of the time, the ALJ found she would be able to perform any of her past work (as a customer service representative, a dispatcher, or as a hair braider). AR 32. Because the ALJ found plaintiff could perform past work, despite her impairments, if she ceased drinking, plaintiff's alcohol use was deemed a contributing factor to her disabling limitations and, therefore, plaintiff was found to be not disabled. AR 33. The ALJ's final finding was:

> The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use (20 CFR 416.920(f) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of this decision[, August 8, 2018].

AR 33.

**DISCUSSION**

Plaintiff moves for summary judgment, seeking a determination that the ALJ's unfavorable decision is erroneous. Plaintiff argues, among other things: (1) that the ALJ erred by finding alcohol use was a material factor to plaintiff's disability and (2) the ALJ improperly rejected the opinion of examining physician Dr. El-Sokkary, who concluded plaintiff has significant mental impairments.

The Court agrees the ALJ erred with respect to finding alcohol was a material factor to plaintiff's disability and with respect to rejecting Dr. El-Sokkary's opinion for the reasons discussed below. Accordingly, the Court need not and does not reach plaintiff's other arguments.

**I.  Materiality of Plaintiff's Alcohol Abuse**

After finding that plaintiff's impairments were severe enough to be disabling, the ALJ determined plaintiff's substance use was a material, contributing factor to this determination. AR 24-27. Because the ALJ found plaintiff's alcohol use was material, the ALJ concluded plaintiff was

13

1    not disabled from the date the application was filed, February 2, 2015, to the date of the ALJ's
2    August 8, 2018 decision, and denied benefits. AR 33. Plaintiff argues the ALJ improperly analyzed
3    the materiality of plaintiff's alcohol use, that he failed to support his materiality determination with
4    substantial evidence, and that plaintiff's alcohol use was not a material, contributing factor to her
5    disability. Dkt. No. 24 at 10-15 (Plaintiff's MSJ).

6    Plaintiff bears the burden of demonstrating her alcohol use was not a material contributing
7    factor to a finding of disability. *See* 20 C.F.R. § 404.1535; *Parra*, 481 F.3d at 748. The relevant
8    inquiry is whether plaintiff's disabling impairments would remain if plaintiff stopped her alcohol
9    use. *See* 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). Recognizing the difficulty in evaluating
10   disability cases with co-occurring DAA and mental disorders, the Ninth Circuit has distinguished
11   "between substance abuse contributing to the disability and the disability remaining after the
12   claimant stopped using drugs or alcohol" and found that "[j]ust because substance abuse contributes
13   to a disability does not mean that when the substance abuse ends, the disability will too." *See Sousa*,
14   143 F.3d at 1245. An ALJ's finding that substance use is material must be supported with evidence
15   in a fully developed record that establishes the claimant's co-occurring mental disorder would
16   improve to the point of non-disability in the absence of DAA. Social Security Ruling, SSR 13-2p,
17   2013 SSR LEXIS 2.; Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism
18   (DAA), 78 FR 11939-01. To this end, "a record of multiple hospitalizations, emergency department
19   visits, or other treatment for the co-occurring mental disorder—with or without treatment for
20   DAA—is an indication that DAA may not be material even if the claimant is discharged in improved
21   condition after each intervention." *Id*.

22   The ALJ's finding that plaintiff's alcohol consumption is material to her disability is not
23   supported by substantial evidence and is therefore reversible error. The ALJ based his materiality
24   finding on plaintiff's two ER visits for pancreatitis, the first in July 2016 and the second in
25   November 2016, but failed to address plaintiff's entire medical history. AR 23.

26   In plaintiff's extraordinarily extensive medical history and long list of regular treatment
27   providers, plaintiff was never flagged as having a drug or alcohol problem. Indeed, plaintiff's
28   medical records do not discuss her use of alcohol let alone a drinking or drug problem. The Court

14

has carefully reviewed plaintiff's substantial records of exams for x-rays, MRIs, psychological exams and treatment, and physical health records; they reveal that, except for the two ER visits in 2016, her records do not indicate she ever arrived for the exams/appointments intoxicated or that her regular medical providers were concerned about plaintiff's alcohol intake.[6] AR 396-405, 437-512, 523-25, 528-30, 543-63, 694-704, 664-68, 708.[7] Further, the state agency consultants at the initial and reconsideration levels of adjudication reviewed plaintiff's treating records and stated "there is no evidence of any substance abuse disorder/DAA issue." AR 136, 156. Nor do the two prior ALJ hearing decision mention any drug or alcohol issue. AR 95-7, 102-12.

Plaintiff's mental health disorders and her myriad of physical issues make it difficult to determine the exact cause of her pancreatitis. The Ninth Circuit distinguishes "between substance abuse contributing to the disability and the disability remaining after the claimant stop[s] using drugs or alcohol" and found that "[j]ust because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability will too." *See Sousa*, 143 F.3d at 1245. Here, the evidence that alcohol or drugs are even a contributing factor to plaintiff's mental and physical health is sketchy. However, the record contains no support for a finding that "when the substance abuse ends, the disability will too."

For these reasons, the Court concludes that the ALJ failed to support with substantial evidence the determination that plaintiff's alcohol abuse was a material, contributing factor to her disability. In this way, the ALJ committed reversible error.

---

[6] Plaintiff's treating psychiatrist noted the July 2016 hospitalization; he otherwise did not indicate ongoing problems with alcohol. AR 546, 713. And the ALJ specifically noted plaintiff's primary care physician wrote plaintiff "rarely drinks alcohol." AR 23.

[7] Also, it is disputed whether plaintiff was intoxicated during the 2016 ER visits let alone whether the pancreatitis was in fact the result of alcohol consumption. AR 57-58. Plaintiff's testimony from 2018 hearing: "I don't drink 5 drinks a day. I don't even know where [the ER doctor] got that from. I never told him that. I told him I had a few drinks the day before or whatever." Plaintiff testified "at one point" she drank alcohol for depression but realized the alcohol was not helping and stopped drinking. AR 58. Plaintiff speculated the ER doctor confused her with someone else and her pancreatitis was caused by something other than alcohol. AR 59.

## II. Dr. El-Sokkary's Opinion

Plaintiff argues the ALJ improperly rejected Dr. El-Sokkary's evaluation of plaintiff. The ALJ and defendant characterize Dr. El-Sokkary's opinion as (1) an outlier making plaintiff out to be much less capable/able compared with plaintiff's other medical evaluations and (2) internally inconsistent. AR 31; Dkt. No. 26 at 20 (Opposition). The Court disagrees on both fronts and finds Dr. El-Sokkary's evaluation should not have been rejected.

Generally, an examining physician's opinion should be given more weight than that of a physician who has not examined the claimant. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (*quoting Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). This is necessary "because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (*quoting Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) *(citing Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)).

The ALJ considered the examining psychologist Dr. El-Sokkary's opinion twice: first in the context of alcohol use and the second time without alcohol use. AR 24, 31. However, unlike the non-examining opinions of doctors Held, Pompa, and Morando, the ALJ rejected Dr. El-Sokkary's opinion, without providing specific and legitimate reasons, both in and outside the context of substance use. *Id.*

First, the ALJ rejected Dr. El-Sokkary's opinion because Dr. El-Sokkary did not review the pancreatitis hospitalization records. AR 24. Later, the ALJ rejected Dr. El-Sokkary's opinion because of the ALJ's determination that Dr. El-Sokkary's findings that plaintiff "demonstrates a limited capacity to understand, remember, and perform simple tasks and struggles to maintain a sufficient level of concentration, persistence and pace" were "inconsistent with the claimant's

16

contemporaneous treatment records which generally reflect normal mental status examinations with memory and concentration within normal limits." AR 31. However, the ALJ himself found that plaintiff has moderate limitations in exactly the same areas of functioning. AR 25-26. On this account, the ALJ's rationale in rejecting Dr. El-Sokkary's opinion is inconsistent with the ALJ's own findings.

Further, Dr. El-Sokkary's opinion did not conflict with other examining doctors' notes. Both the ALJ and defendant ignore the examining doctors' notes – many of which describe plaintiff hearing voices, hallucinating, experiencing paranoid ideation, etc. Dr. El-Sokkary's opinion includes detailed and specific notes – in stark contrast to many of plaintiff's other examining doctors, whose notes are a few lines long and reflect only high level observations.

The ALJ also rejected the El-Sokkary opinion as internally inconsistent with Dr. El-Sokkary's notations that plaintiff "is able to care for her hygiene, grooming and daily activities" and "inconsistent with the field office observations that the claimant had no difficulty understanding and concentrating." AR 31. However, Dr. El-Sokkary also noted that plaintiff's activities were limited to "light cooking and cleaning"; that "her children keep an eye on her": and that plaintiff has an in-home care provider because plaintiff is unable "to cook and do daily activities alone." AR 528. Dr. El-Sokkary's notes are detailed and thoughtful. While Dr. El-Sokkary noted plaintiff is capable to care for her hygiene and daily living activities, he defined "capable to care for her hygiene and daily living activities" as "light cooking and cleaning" and that plaintiff "spends the majority of her time at home with her children who keep an eye on her." AR 528. Defendant argues these statements are contradictory. Dkt. No. 26 at 21 (Opposition). The Court disagrees – simply because plaintiff is capable of performing "light cooking and cleaning" does not mean she is fully capable to care for all of her daily living activities.

The ALJ's rationale for rejecting Dr. El-Sokkary's opinion is unsupported by the record. Dr. El-Sokkary concluded plaintiff has significant mental impairments – impairments reflected in the ALJ's own finding that plaintiff has a severe bipolar disorder – and should have been given proper weight. AR 20, 530. For all these reasons, the ALJ erred in rejecting the opinion of Dr. El-Sokkary.

17

### III. Remedy Upon Remand

The remaining question is whether to remand this case for further administrative proceedings or for the immediate payment of benefits under the credit-as-true doctrine. "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (*citing Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). However, under the credit-as-true rule, the Court may order an immediate award of benefits if three conditions are met. First, the Court asks "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id*. (*quoting Garrison*, 759 F.3d at 1020). Second, the Court must "determine whether there are outstanding issues that must be resolved before a disability determination can be made, . . . and whether further administrative proceedings would be useful." *Id*. (citations and internal quotation marks omitted). Third, the Court then "credit[s] the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Id*. (*citing Treichler*, 775 F.3d at 1101). Even when all three criteria are met, whether to make a direct award of benefits or remand for further proceedings is within the district court's discretion. *Id*. (*citing Treichler*, 775 F.3d at 1101). In rare instances, all three credit-as-true factors may be met but the record as a whole still leaves doubts as to whether the claimant is actually disabled. *Trevizo v. Berryhill*, 871 F.3d 664, at 683 n.11 (9th Cir. 2017). In such instances, remand for further development of the record is warranted. *Id*.

This Court has found that the ALJ failed to support with substantial evidence the determination that plaintiff's alcohol abuse was a material, contributing factor to her disability. Further, the Court found the ALJ improperly rejected the opinion of Dr. El-Sokkary, who concluded plaintiff has significant medical impairments and she "would have difficulty in keeping a regular workday/workweek schedule without brief interruptions from psychiatric symptoms."[8] AR 530.

---

[8] Dr. El-Sokkary went as far to note that should "claimant's disability application be approved, in [his] opinion, claimant is unable to manage supplemental funds at this time." AR 530.

18

Due to plaintiff's extensive mental and physical impairments, the Court has no doubt as to her disability and the record has been fully developed.

As such, the Court hereby REMANDS for immediate payment of benefits.

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment. The Court REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for immediate payment of benefits.

**IT IS SO ORDERED**.

Dated: March 30, 2021

_____
SUSAN ILLSTON
United States District Judge